# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLP
Ten James Street
Florham Park, New Jersey 07932
(973) 301-0001
Attorneys for Defendants/Petitioners
City of Newark and City of Newark
Police Department

| | |
|---|---|
| ANTHONY BUONO,<br><br>          Plaintiff,<br><br>vs.<br><br>CITY OF NEWARK, CITY OF<br>NEWARK POLICE DEPARTMENT,<br>and ANTHONY AMBROSE,<br>individually and in his capacity as the<br>Police Director and Chief of Police for<br>the City of Newark<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION ESSEX COUNTY<br>DOCKET NO. ESX-L-4324-06<br><br>CIVIL ACTION<br><br>**PETITION OF REMOVAL TO THE<br>UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY** |

**TO:   THE CLERK AND THE HONORABLE JUDGES
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

Petitioners, CITY OF NEWARK and CITY OF NEWARK POLICE DEPARTMENT

("Defendants"), hereby file the within Petition of Removal of this action from the Superior

Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-4324-06, in which it

is now pending, to this Court, and in support thereof do allege that:

{00269787; 1}

1.     On or about May 25, 2006, Anthony Buono ("Plaintiff") commenced a civil action in the Superior Court of the State of New Jersey, Law Division, Essex County, captioned Anthony Buono v. City of Newark et als., by filing a Complaint bearing Docket No. ESX-L-4324-06 ("Complaint"), annexed hereto as Exhibit A.

2.     On or about June 22, 2006, Defendants were furnished a copy of the Summons and Complaint. See Exhibit B.

3.     In the "Preliminary Statement" of the Complaint, Plaintiff avers Defendants violated the First and Fourteenth Amendment of the United States Constitution by retaliating against Plaintiff for his perceived political support of Mayoral challenger Cory A. Booker against then Mayor Sharpe James, resulted in work place retaliation.  Plaintiff has alleged that said support continued during the 2002 and 2006 election campaigns, as did the Constitutional violations.  Plaintiff has alleged that the violations were committed by his superior officers.

4.     In Count One of the Complaint, Plaintiff has alleged that Defendants violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A 34:19-1, et seq, by specifically, but not limited to, taking adverse employment actions by demoting Plaintiff from the rank of Lieutenant to Sergeant.

5.     Plaintiff has alleged that the demotion was a violation of his Constitutional Rights and in retaliation for his support of Mayor Cory Booker.

6.     In Count Two of the Complaint, Plaintiff has alleged that Defendants' actions constituted a violation of his Civil Rights and are actionable under 42 U.S.C. §1983.

{00269787; 1}

7.    Plaintiff has alleged that as a result of the alleged perceived political affiliation with Mayor Cory A. Booker stemming from 2002 through 2006, Defendants violated his civil rights when he was demoted to the rank of Sergeant.

8.    In Count Three of the Complaint, Plaintiff has alleged that Defendants had violated Plaintiff's Equal Protection Rights under the Fourteenth Amendment of the United State Constitution, under Article I, Paragraph I of the New Jersey State Constitution, and against 42 U.S.C. § 1983.

9.    The basis for the CEPA violation (Count One), the Civil Rights violation (Count Two), and the Equal Protection violation (Count Three) are identical in both fact and law as identified within the Complaint, i.e. based upon the alleged perceived political affiliation and subsequent demotion from the rank of Lieutenant to Sergeant.

10.    As of this date, Defendants have not filed a responsive pleading in this action commenced by Plaintiff in Superior Court of New Jersey, Law Division, Essex County and no other proceedings have transpired in this action.

11.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331(federal question) and 28 U.S.C. §1367(a)(supplemental jurisdiction) since the State statutory law claim is so related to the Federal claims and they form part of the same case under Article III of the United States Constitution.

12.    This Court has personal jurisdiction over all the parties pursuant to 28 U.S.C. §1965.

13.    This Petition is filed within the time provided by 28 U.S.C. §1446(b).

14.    The documents annexed hereto as Exhibit A and Exhibit B comprise all the pleadings and orders served upon the parties.

3

15.   Simultaneously with the filing of this Petition For Removal, Defendants have given written notice to Plaintiff's Attorney and the Clerk of the Superior Court for Essex County in Newark, New Jersey.

16.   Defendants reserve all defenses available to them at law, in equity or otherwise. Defendants do not waive any defenses available to it by filing the instant Petition For Removal.

**WHEREFORE**, Defendants respectfully request that this action, now pending in the Superior Court, Law Division, Essex County, be removed to this Court.

Respectfully Submitted,
SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLP
Attorneys for Defendants City of Newark and
City of Newark Police Department

By:_____
STEFANI C. SCHWARTZ (5901)

DATED:      July 21, 2006

{00269787; 1}

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of Defendants' Petition of Removal as well as Defendants' Notice of Filing of Petition of Removal to the United States District Court, were served upon counsel for Plaintiff on July 21, 2006, via hand delivery to Jeffrey D. Catrambone, Esq., c/o Law Offices of Sciarra & Catrambone, LLC, 1130 Clifton Avenue, Clifton New Jersey 07013, Anthony Ambrose, 602 North 4th Street, Newark, New Jersey, 07107-2629, and via hand delivery to the Clerk of the United States District Court for the District of New Jersey, M.L. King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey 07102.

The undersigned further certifies that a Notice of Filing of Petition of Removal, with attached Petition of Removal was sent for filing this date by hand delivery to the Clerk of the Superior Court, Essex County, Law Division, County Courthouse Building, 50 W. Market Street, Newark New Jersey 07102.

STEFANIE SCHWARTZ (5901)

Dated: July 21, 2006

5

{00269787; 1}

**EXHIBIT "A"**

**SCIARRA & CATRAMBONE, LLC**
1130 Clifton Avenue
Clifton, NJ 07013
(973) 242-2442
Jeffrey D. Catrambone, Esq.
*Attorney for Plaintiff*



SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CIVIL PART
ESSEX COUNTY

| | |
|---|---|
| ANTHONY BUONO, | : |
| Plaintiff, | : Docket No. 4324-06 |
| v. | : |
| CITY OF NEWARK,<br>CITY OF NEWARK POLICE<br>DEPARTMENT, and<br>ANTHONY AMBROSE,<br>*individually and in his capacity as*<br>*the Police Director and Chief of Police*<br>*for the City of Newark,* | : ***COMPLAINT*** |
| Defendants. | : |

Plaintiff Anthony Buono ("Plaintiff"), by and through his attorneys, Sciarra & Catrambone,
LLC, as and for a Complaint, against Defendants City of Newark, City of Newark Police
Department, and Anthony Ambrose, individually and in his capacity as Police Director and Chief
of Police for the City of Newark (collectively, "Defendants"), alleges and says as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought under the laws of the State of New Jersey, specifically the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.*, and to redress the deprivation, under color of statute, ordinance, regulation, custom or usage of a right, privilege, or immunity secured to Plaintiff under the First and Fourteenth Amendments to the United States Constitution and provisions of the New Jersey State Constitution including but not limited to Article I, Paragraph I; and arising under the laws and statutes of the United States, specifically 42 U.S.C. §1981 §1983, §1985 and §2000, *et seq.* ("42 U.S.C. §1983," or "§1983").

2.     Plaintiff, in addition to monetary damages, seeks declaratory and injunctive relief against Defendants, permanently enjoining and restraining Defendants, their agents, servants and employees from taking any further retaliatory action against Plaintiff, including but not limited to retaliation, harassment and intimidation based on his perceived political affiliation and whistle-blowing activities.

## JURISDICTION

3.     Jurisdiction is properly laid in Superior Court of New Jersey in that Defendants are subject to personal jurisdiction in the State of New Jersey.

4.     Venue is proper in Essex County as the events giving rise to the instant claim occurred within the County of Essex, State of New Jersey.

## THE PARTIES

5. Plaintiff Anthony Buono has been a member and employee of the Newark Police Department since on or about July 31, 1981. Prior to his unlawful and retaliatory demotion to the rank of Sergeant in or about November 2005, Plaintiff held the rank of Lieutenant since in or about October 2000. Prior to that Plaintiff held the rank of Sergeant since in or about February 1996.

6. Defendants City of Newark ("Newark" or "the City") and City of Newark Police Department ("the Department") are employers within the meaning of CEPA and 42 U.S.C. §1983 and the City of Newark is a political subdivision of the State of New Jersey and therefore falls under the province of 42 U.S.C. §1983 and other statutes.

7. Anthony Ambrose, at all times relevant hereto, was the Chief of Police for the City of Newark and subsequently became the Police Director for the City of Newark.

## STATEMENT OF FACTS

8. In or about May 2002, after a well-publicized, extremely contentious and competitive campaign, the then-incumbent Mayor for the City of Newark, Sharpe James, defeated his challenger, Cory Booker in the 2002 Mayoral Election for the City of Newark. During that election, Plaintiff openly and actively supported the Booker campaign for Mayor and voiced his support for Booker for Mayor.

9. All disciplinary and other adverse employment actions outlined below were without merit and legitimate purpose, and were instituted solely with retaliatory and harassing intent, as a result of Plaintiff's protected activity.

10. From on or about April 29, 2002 and May 10, 2002, just prior to the election, Plaintiff

attended a Police Department training at a Ramada Inn in Newark. During that two-week training session, Plaintiff, along with all others in attendance, engaged in several discussions regarding the upcoming mayoral election. Present during such conversations were Captain Albert Cicalese, who was loyal to then-Mayor James, of the Department.

11.    As a result of an alleged "anonymous complaint," Captain Cicalese began videotaping Plaintiff the day after the election, purportedly because Plaintiff was leaving work early. As a result, Plaintiff was subjected to disciplinary charges alleging forty-two (42) counts of various departmental rules and regulations. Defendants, specifically then-Acting Police Director Ambrose, sought to take approximately 10 ½ hours pay from Plaintiff. Plaintiff refused any and all offers by Defendants to plea bargain those charges, due to the baseless nature thereof.

12.    Within one week of the mayoral election in May 2002 Plaintiff was called into Lieutenant Costa's office who was the Executive Lieutenant with regard to Plaintiff's command. Lieutenant Costa informed Plaintiff that a Lieutenant Muscarella who at the time worked in then-Director Ambrose's office initiated a conversation with Lieutenant Costa regarding Plaintiff's political affiliation.

13.    On or about May 29, 2002 Plaintiff received a Warning Notice for allegedly not wearing the proper attire while working as a Court Liaison for the Newark Municipal Court. Notably, Captain Gajda issued a memo immediately after Plaintiff received a Warning Notice that the uniform should be worn by all members while acting as Court Liaison. Notably Detective Hodge of the Department continued to wear civilian attire while working as a Court Liaison and received no Warning Notices with regard thereto.

14.    On that same date, Plaintiff spoke with Deputy Police Director Rocco Malanga in front of

-4-

31 Green Street, which is where the building housing the Newark Municipal Court is located. Deputy Director Malanga advised Plaintiff that he observed Plaintiff's name on a "list" of individuals who were purportedly politically affiliated with Cory Booker. That list was maintained by Defendants, specifically individuals within the City's administration who were loyal to Mayor James. Malanga stated that he was "surprised" to see Plaintiff's name on the above referenced list. At that time Plaintiff inquired with Malanga as to whether he believed that Plaintiff would suffer retaliation as a result of his perceived political affiliation. Malanga advised Plaintiff that he "thought so" or words to that affect and that he would speak to Plaintiff on a later date regarding this issue.

15.     On or about June 3, 2002 Plaintiff was transferred from his position as Court Liaison to the "cell block duty" which is considered to be a punishment detail within the Department. Additionally, he was served with a change of tour notice switching his shift from primarily mornings to that of afternoons in order to interfere with Plaintiff's schooling which took place in the evenings and also to interfere with his part-time work outside the Department.

16.     Also on June 3, 2002 Plaintiff met with Chief Court Administrator Hatti Roberts with regard to Plaintiff's acquiring a letter regarding his work performance while working under Court Administrator Roberts while Plaintiff acted as Liaison Officer. Roberts informed Plaintiff that she could not provide any such letter due to the "political nature of Plaintiff's situation" or words to that affect. In addition Roberts advised Plaintiff of a meeting which took place on May 24, 2002 in the basement of City Hall. Present at that meeting were then Mayor James, various Department Heads from within the City, including then Police Director Ambrose. Roberts advised Plaintiff that Mayor James openly and vehemently expressed his intention to retaliate against City workers with regard to their employment if they politically supported Cory Booker, and that he did not care if they were

-5-

Civil Service workers or not, they could still be fired, or words to that affect. Ultimately Plaintiff did not receive a letter of reference from Roberts but did not receive a Letter of Commendation from Essex County Assistant Prosecutor Vito DiBuono who worked with Plaintiff while acting as Court Liaison. During the time he worked with Assistant Prosecutor DiBuono Plaintiff processed over twenty-five thousand cases with a high degree of competence and professionalism.

17.     In or about June 2002, Plaintiff spoke with Newark Fire Battalion Chief Brian Kirkland regarding the above referenced meeting which took place in the basement of City Hall on May 24, 2002. Kirkland subsequently met with Plaintiff and confirmed the May 24th meeting and that all Department Heads, including then Director Ambrose, were present. Kirkland confirmed that Mayor James stated that he would retaliate against all City workers who supported Cory Booker's mayoral campaign and that these individuals would not be afforded Civil Service protections.

18.     On or about July 1, 2002, Robert Rankin was sworn is as Police Director and Defendant Ambrose returned to the position of Chief of Police. At that time, Director Rankin was made aware of Plaintiff's complaints of retaliation outlined above. Director Rankin subsequently transferred Plaintiff on July 16, 2002 from the Cell Block to the Medical Services Unit in Internal Affairs. Plaintiff's duties included implementing and monitoring the Department's Sick Leave Policy, coordinating and monitoring the Department's Drug Testing Policy, maintaining compliance with OSHA regulations, working with regard to Internal Affairs Investigations and acting as a lead investigator assigned to handle complaints regarding Police Officers involvement in auto accidents while driving Departmental vehicles.

19.     In the summer of 2002, Detective James Wright of the Department advised Plaintiff that while Detective Wright was in Director Rankin's office, Director Rankin showed Wright a copy of

a list maintained by the Mayor's Office. The list was given to Rankin by Charles Jones, an aide to then-Mayor James. The list contained names of individuals within the Police Department who should be transferred in retaliation for their political support of Cory Booker. Plaintiff's name was on that list and according to the list Plaintiff was to be transferred to the Cell Block or Communications Division.

20.     Several months thereafter, Deputy Director James Nelson advised Plaintiff of the existence of a letter which the Mayor had given to him stating that Plaintiff supported Cory Booker and that Plaintiff "ran the security detail at Brick Towers where Cory Booker lives" or words to that affect. The letter also indicated that Plaintiff should be transferred due to his support for Cory Booker. Deputy Director Nelson also informed Plaintiff that the list had been shredded.

21.     In April of 2004, then-Mayor James replaced Police Director Rankin with then-Chief Anthony Ambrose. Upon Ambrose being reappointed to Police Director, on April 19, 2004 Plaintiff was transferred from the Medical Services Unit for Internal Affairs back to the Communications Division. Shortly after that transfer, Defendants' retaliatory and harassing acts against Plaintiff grew increasingly worse as outlined below.

22.     On or about May 25, 2004, then-Police Chief Irving Bradley initiated an investigation of Plaintiff regarding his handling of an allegation that a six year old female had been sexually assaulted. According to Chief Bradley he had been notified of the allegation improperly. According to the Chief he did not wish to be notified of any such allegations. Plaintiff notified the Chief regarding recent publicity surrounding DYFS and its performance of its duties. Plaintiff used "sound judgment and common sense" as required by Departmental Policy regarding his notification of the Chief of this issue.

-7-

**23.** On that same date Plaintiff was issued a Warning Notice with regard to a dispatcher's purported failure to call a police unit to the cell block located at 31 Green Street where the Municipal Court is located for a prisoner run. On the night in question Plaintiff was the only supervisor on duty while two supervisors are required for the volume of work in the Communications Division.

**24.** On or about June 11, 2004 Plaintiff was issued a Warning Notice for failure to address a "Queue Alert" or notifying the District Commander, Captain Sam DeMaio. However, suppression units could be used first to abate the alert without the need to notify Captain DeMaio.

**25.** On or about June 12, 2004 Plaintiff was issued a Warning Notice for failing to notify the Chief of Police of a power outage. However in fact Plaintiff had notified the Director and the Chief regarding the power outage.

**26.** On or about July 17, 2004 Plaintiff was informed that he was a subject to an Internal Affairs Investigation with regard to why an assignment was not dispatched from the Communications Division within the proper time frame. Those allegations falsely allege that Plaintiff neglected his duty by failing to ensure that a Motor Patrol unit was dispatched to respond to a Domestic Violence report. Sergeant Carpenter, who was in charge of the investigation, informed Plaintiff that despite the baseless nature of the charges she was told that she "could not clear Plaintiff because she was ordered to bring him up on charges." This was in response to Plaintiff's offer to provide evidence that failure to meet response objectives was due to serious manpower shortages within the Department.

**27.** On or about July 16, 2004, Director Ambrose contacted the Communications Division and advised that a police unit should be called to disperse a crowd located at Orange and Nesbit Streets within the City of Newark. Plaintiff immediately dispatched the police units as requested and placed

-8-

the incident on the Department's "unusual incident report". According to Director Ambrose Plaintiff did not properly follow-up to the dispatching of police units to a location with regard to documenting the actions taken by the responding police units. Such an assertion is without merit.

28.     On or about July 30, 2004 Director Ambrose ordered that Plaintiff be removed from the list of individuals previously chosen to attend the West Point Leadership and Command Program which is sponsored by the New Jersey Association of Chiefs of Police. Director Ambrose drafted a letter in that regard. Director Ambrose also removed Plaintiff from a training class that he was scheduled to attend on September 19, 2004. Director Ambrose also denied Plaintiff permission to attend several other courses which he had requested to attend. Those courses were directly related to Plaintiff's performance of his duties for the Newark Police Department.

29.     On or about July 4, 2004 Plaintiff supervised the Communications Division on an extremely busy night during which ten critical incidents occurred, including but not limited to, three armed robberies, two stabbings, two police-involved accidents, one shooting, one car-jacking and one police pursuit. Nonetheless, Chief Bradley initiated an investigation of Plaintiff with regard to twenty-five alleged transmissions over the police communications system where Officers called the dispatcher by his first name.

30.     In his written submission regarding the July 4th "incident", Plaintiff advised Defendants that he has not deserved all the above referenced Warning Notices with regard to various incidents that occurred while Plaintiff was commander of the Communications Division. Plaintiff stated that the Warning Notices were unjustified and that he planned to file a grievance with regard thereto. As a result of these statements, Chief Bradley initiated a separate investigation against Plaintiff for insubordination. These charges were later found to be unsubstantiated by Lieutenant Keer of the

Department. As a result Lieutenant Keer was ordered to change his findings. When he refused, Keer was transferred out of the Internal Affairs Investigation Division.

31.    On or about July 13, 2004, Plaintiff was investigated as a result of an incident which occurred on or about July 8, 2004 regarding a missing child. Plaintiff made all the proper notifications with regard thereto. Nonetheless, Plaintiff was served with disciplinary charges which were subsequently dismissed.

32.    On or about September 15, 2004 Plaintiff was investigated as a result of his purported failing to allow a Police Officer to go for training. This was the result of Plaintiff not having adequate manpower to cover basic public safety needs in the Communications Department. Additionally, the requests for training were never sent to the Communications Division for a supervisor to review.

33.    On or about September 30, 2004 Plaintiff was charged as a result of an incident which occurred while he was off duty on or about August 24, 2004 regarding a break-in at a vehicle in the parking lot of a C-Town Supermarket within the City. Plaintiff had made lawful arrests regarding that incident. Nonetheless, Plaintiff was served with a Preliminary Notice of Disciplinary Action dated September 30, 2004, wherein Defendants sought the removal of Plaintiff from his position with the Police Department and the termination of his employment. Subsequently Plaintiff was served with a Final Notice of Disciplinary Action wherein he was required to serve a thirty day suspension. That matter is currently on appeal before the Merit System Board. Additionally, on or about September 3, 2004 the Essex County Prosecutor's Office, to whom Defendants had referred this matter, concluded that there was no basis for the Prosecutor to pursue this matter.

34.    On or about November 11, 2004 Plaintiff was charged departmentally with regard to a Narcotics Complaint allegedly not being given out in a timely fashion. Plaintiff was not the

-10-

supervisor on duty at the time. Nonetheless in the Preliminary Notice of Disciplinary Action dated November 11, 2004 Defendants sought the removal of Plaintiff from his position with the Police Department and the termination of his employment. The disciplinary charges were later dismissed at the Departmental level.

35.     Additionally, in or about 2005 Defendants disqualified Plaintiff's son as a candidate for the test to become a Police Officer based upon a purported residency requirement. In fact, Plaintiff resided in the City of Newark during the relevant time period.

36.     On or about April 15, 2005 Plaintiff submitted a request to the Police Director as to an explanation for his son's improper disqualification from a list of candidates for Newark Police Officer as a result of a purported residency issue. Plaintiff never received a response thereto despite following up on his request to meet with the Director regarding this issue on at least six (6) different occasions. Subsequently, Plaintiff's son, Anthony Buono Jr., filed an appeal to the Merit System Board of his removal from the list of eligible candidates for Newark Police Officer. His appeal was successful by way of a final decision of the Merit System Board in or about January 2006. Defendants, upon realizing that Plaintiff's son was placed back on the list, unsuccessfully attempted to appeal that decision as their appeal was untimely and without merit.

37.     On or about Monday May 9, 2005 Plaintiff attended a political function, while off duty, for the commencement of the Cory Booker Campaign for Mayor, with that election to occur in May 2006. Immediately thereafter, on May 13, 2005 Plaintiff was summoned to his Commander's Office, Deputy Chief Brian Morris, who advised Plaintiff that he was being shifted from the 6:00am to 2:00pm shift to the overnight shift, 8:00pm to 4:00am. Morris advised Plaintiff at that time that the shift change was ordered by Deputy Director Padilla, purportedly due to the implementation of a new

-11-

"Cease Fire Program." However, there was no need for a Communications Supervisor to be assigned to the program for a specific shift, as the program involved the gathering of statistical data from outside law enforcement agencies and did not require a Communications Supervisor from the Newark Police Department to work any set shift. In fact, even though Plaintiff started his purportedly "new" assignment on or about June 13, 2005, Plaintiff was given no new orders or directives regarding the Cease Fire Program, but instead continued to perform his duties as a Communications Supervisor as he had prior to this "new" assignment.

38.  On or about June 16, 2005, Plaintiff was served with a warning notice with regard to his not commenting on an assignment which came to the Communications Division. However at the time the assignment in question came in Plaintiff was working on a call regarding a double shooting/homicide, and Plaintiff was on a different computer screen in order to provide a detective at the scene of the homicide with information. Plaintiff eventually provided comments for the assignment in question. All of Plaintiff's actions were in accordance with the Department's rules and regulations and/or directives of the Police Director. Plaintiff filed a written grievance dated June 21, 2005 regarding the warning notice which was improperly given.

39.  On or about July 3, 2005, and on several occasions thereafter, Director Ambrose would call Plaintiff directly while he was on duty in the Communications Division and question him regarding Plaintiff's assignments of Police personnel and resources to various matters. On those occasions Ambrose would yell and curse at Plaintiff and state, "this is political, right?" or words to that effect. Ambrose, with retaliatory and harassing intent, would unjustifiably scrutinize Plaintiff's assignments, question Plaintiff's judgment and order that certain assignment be executed, without having knowledge of the police units and other resources available during the shift in question.

**40.** On or shortly after July 4, 2005, Plaintiff complained in writing regarding the above acts of retaliation and harassment to Darlene Noble, the Affirmative Action Officer for the Mayor's Office. Despite the above egregious acts by Defendants, Noble advised Plaintiff in writing , without any other explanation or direction to Plaintiff, as follows on or about August 10, 2005: "The Office of Affirmative Action received a complaint of harassment. I have reviewed the complaint and concluded that this office do not *[sic]* have jurisdiction over the complaint." To date Defendants have provided no other response to Plaintiff's complaints of retaliation and harassment as a result of his protected activity and took no other action with regard thereto.

**41.** Additionally, Plaintiff made an additional complaint to Defendants regarding the harassment by Director Ambrose, including but not limited to Ambrose's berating of Plaintiff and his unjustified and uninformed scrutiny of Plaintiff's assignments from the Communications Division as outlined above. As a result of this Complaint, rather than investigate Plaintiff's allegations of retaliatory and harassing conduct, Defendants instead in a written report/memorandum "found that Lieutenant Buono violated several provisions of the Newark Police Rules and Regulations ... and specific central communications directives pertaining to his duties."

**42.** Additionally, by way of a report dated July 4, 2005, Deputy Chief Brian Morris forwarded the above referenced complaint by Plaintiff and acknowledged that Plaintiff complained of "continued harassment for what he describes as 'the last three years, since the last election.'" The report also acknowledges that Plaintiff made complaints to Director Ambrose on or about July 3, 2005 regarding the egregious lack of proper and sufficient staffing in the Communications Division for the Police Department, which impacts public safety and welfare.

**43.** On or about November 23, 2005, Defendants illegally demoted Plaintiff from the rank of

-13-

Lieutenant to Sergeant by way of a Final Notice of Disciplinary Action, purportedly arising out of Plaintiff's alleged failure to notify his subordinates of a certain deployment. Such charges were without merit and were in retaliation for Plaintiff's above complaints impacting public safety issues and other statutorily and constitutionally protected activity.

**44.** With regard to the preordained nature of the relentless and baseless departmental disciplinary proceedings outlined above, said proceedings were held before Captains Quackenbush, Simpson and Gajda of the Newark Police Department, who acted as hearing officers. On one occasion, Captain Quackenbush advised Plaintiff's counsel in those proceedings that no matter what occurred at that hearing, including the testimony of Plaintiff, there was nothing that would change the predetermined outcome of the proceedings, namely that Defendants would find Plaintiff guilty of the disciplinary charges. Thus Plaintiff could never obtain a fair hearing at the departmental level regarding the numerous disciplinary charges filed against him.

**45.** In addition to the above described adverse employment actions and hostile work environment, Defendants have refused to promote Plaintiff to the rank of Captain, despite his qualifications therefore and his being ranked fifth on a list of candidates for that position on a promotional list pursuant to New Jersey Civil Service Statutes.

**46.** Defendants' illegal, retaliatory and harassing actions against Plaintiff in violation of CEPA and §1983 with regard to his employment are without legitimate purpose and constitute a sustained course and pattern of conduct, and continue to date.

## COUNT ONE
### (Violations of CEPA)

47.     Plaintiff repeats and re-alleges each and every allegation contained in each previous paragraph as if set forth at length herein.

48.     Defendants' collective actions against Plaintiff were in retaliation for, *inter alia,* Plaintiff's written and oral complaints regarding inadequate staffing within the Newark Police Departments' Communications Division, which impacts upon the safety and well-being of the citizens of the City of Newark. Defendants unlawfully retaliated against Plaintiff as a result thereof, with such adverse employment actions including but not being limited to Defendants' demotion of Plaintiff from the rank of Lieutenant to Sergeant on or about November 23, 2005.

49.     Plaintiff engaged in "whistle-blowing" activity in that he reasonably believed that Defendants engaged in conduct that was in violation of law and/or public policy, and/or rules or regulations promulgated pursuant to law and/or public policy.

50.     In retaliation for his whistle-blowing activities, Plaintiff suffered retaliatory and harassing acts at the hands of Defendants, as outlined above, constituting unlawful retaliation against Plaintiff in the form of adverse employment actions, and hostile work environment.

51.     Defendants' collective actions against Plaintiff constitute violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.*

52.     As a result, Plaintiff's statutory and constitutional rights have been violated and his protections under the law have been eviscerated.

53.     As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in the loss

of compensation, loss of earning power, loss of self-esteem, loss of standing in the community, physical injury, mental injury, the loss of opportunities for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

54.     The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's statutory and civil rights, and Plaintiff is entitled to punitive damages under applicable law.

## COUNT TWO
### (Violation of Plaintiff's Rights under
First & Fourteenth Amendments to the United States Constitution
and the New Jersey State Constitution, against 42 U.S.C. §1983)

**55.** Plaintiff repeats and re-alleges each and every allegation contained in each previous paragraph as if set forth at length herein.

**56.** The above enumerated actions by Defendants in retaliation for Plaintiff's exercise of his right to freedom of speech, association and right to petition for the redress of grievances are in violation of the First and Fourteenth Amendments to the United States Constitution and provisions of the New Jersey State Constitution. The above-described actions against Plaintiff were taken as a result of, *inter alia,* Plaintiff's perceived political affiliation.

**57.** These illegal actions are an infringement upon the property rights Plaintiff has in his employment in derogation of Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution and provisions of the New Jersey Constitution, in violation of 42 U.S.C. §1983.

**58.** The foregoing actions were taken pursuant to an official and extant policy and practice of Defendants, and were taken by individuals with final policymaking authority over such actions.

**59.** The foregoing violations of law were overseen by Defendant Ambrose, and others, who ratified such violations by Defendants' actions, which were retaliatory and violations of law, and being in a position to stop the illegal behavior, Defendants failed to take any remedial action.

**60.** As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in the loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community,

-17-

physical injury, mental injury, the loss of opportunities for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

**61.**     The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

*-18-*

## COUNT THREE
### (Violation of Plaintiff's Equal Protection Rights under the Fourteenth Amendment to the United States Constitution, and Article I, Paragraph I of the New Jersey State Constitution, against 42 U.S.C. §1983)

62.     Plaintiff repeats and re-alleges each and every allegation contained in each previous paragraph as if set forth at length herein.

63.     Defendants' collective actions as enumerated above violate Plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution, and Article I, Paragraph I of the New Jersey State Constitution of 1947, contrary to 42 U.S.C. §1983.

64.     As a result of the illegal and continuing course of conduct by Defendants described herein, Plaintiff has suffered economic and non-economic/emotional distress damages, resulting in the loss of compensation, loss of earning power, loss of standing in the community, loss of self-esteem, physical injury, mental injury, the loss of opportunities for prospective employment, and is incurring legal expenses and other expenses as a result of Defendants' actions.

65.     The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's statutory and civil rights, and Plaintiff is entitled to punitive damages under applicable law.

-19-

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a.      Awarding Plaintiff damages, including, but not limited to, equitable, punitive and compensatory damages on all lost pension, health insurance and other benefits, wages and rights, including back pay and front pay, and together with both prejudgement and post judgement interest, and damages for emotional distress, and attorneys fees and costs of court;

b .      Awarding Plaintiff damages, including, but not limited to, equitable, punitive and compensatory damages on all lost pension, health insurance and other benefits, wages and rights, including back pay and front pay, together with both prejudgement and post judgement interest, and damages for emotional distress, and attorneys fees and costs of court with regard to harassment, retaliation, and hostile work environment;

c.      Awarding Plaintiff damages, including, but not limited to, equitable, punitive and compensatory damages on all lost pension, health insurance and other benefits, wages and rights, including back pay and front pay, together with both prejudgement and post judgement interest, and damages for emotional distress, and attorneys fees and costs of court; for Defendant's violation of Plaintiff's rights to be free from the injuries which he has suffered due to the Defendant's actions;

d.      Awarding Plaintiff reinstatement to his prior rank of Lieutenant and/or a promotion to the rank of Captain with Defendants, along with all salary, pension and other benefits and rights due to Plaintiff as a result of such reinstatement;

e.      For an order of the Court retaining jurisdiction over this action until Defendants have fully complied with the orders of this Court, and that the Court require Defendants to file such reports as may be necessary to supervise such compliance; and

f.      For such other, further, additional and different relief as this Court deems just

and proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Jeffrey D. Catrambone, Esq., is hereby designated as trial counsel for Plaintiff.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues involved herein.

Respectfully submitted,
**SCIARRA & CATRAMBONE, LLC,**
*Attorneys for Plaintiff*

By: _____
Jeffrey D. Catrambone, Esq.

Dated: May 25, 2006

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned, of full age, hereby certifies as follows:

1.      The matter in controversy is not the subject of any other pending action in any Court.

2.      No other action or arbitration proceeding is contemplated, other than any pending departmental disciplinary proceedings and/or any pending administrative appeals before the New Jersey Department of Personnel, Merit System Board.

3.      There are no other parties to be joined in this action at the present time.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the said statements made by me are willfully false, I am subject to punishment.

Jeffrey D. Catrambone, Esq.

Dated:  May 25, 2006

# CIVIL CASE INFORMATION STATEMENT

## (CIS)



Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Jeffrey D. Catrambone | ( 973 ) 242-2442 | Essex |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
|---|---|
| Sciarra & Catrambone, LLC | |

| OFFICE ADDRESS | |
|---|---|
| 1130 Clifton Avenue | DOCUMENT TYPE: Complaint |
| Clifton, NJ 07013 | JURY DEMAND ☑ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Anthony Buono, Plaintiff | Buono<br>v.<br>City of Newark, City of Newark Police Department, & Anthony Ambrose |

| CASE TYPE NUMBER (See reverse side for listing) 616, 005 | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☑ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|

| RELATED CASES PENDING? ☐ YES ☑ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ☑ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE ☑ UNKNOWN |
|---|---|

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☑ YES ☐ NO | IF YES, IS THAT RELATIONSHIP | ☑ EMPLOYER-EMPLOYEE<br>☐ FAMILIAL | ☐ FRIEND/NEIGHBOR<br>☐ BUSINESS | ☐ OTHER (explain) _____ |
|---|---|---|---|---|

| B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☑ YES ☐ NO |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

MAY 2 5 2006

| ⚕ DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ☑ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
|---|---|

| WILL AN INTERPRETER BE NEEDED? ☐ YES ☑ NO | IF YES, FOR WHAT LANGUAGE: _____ |
|---|---|

| ATTORNEY SIGNATURE | 5·24·06 |
|---|---|

Revised effective 4/1/05

**EXHIBIT "B"**

*Attorney(s): SCIARRA & CATRAMBONE, LLC*
*Office Address & Tel.No.:*    *JEFFREY D. CATRAMBONE, ESQ.*
                              *1130 CLIFTON AVENUE*
                              *CLIFTON, NJ 07013*
                              *(973) 242-2442*

For appropriate action and follow up
Original to Corporation Counsel
Copy to file and sender

<u>*Attorney(s) for Plaintiff(s)*</u>
*Plaintiff(s)*
    **ANTHONY BUONO,**

*SUPERIOR COURT OF NEW JERSEY*
*LAW DIVISION: ESSEX COUNTY*

                      *vs.*

*Docket No. ESX-L-4324-06*

*Defendant(s)*
    **CITY OF NEWARK,**
    **CITY OF NEWARK POLICE DEPARTMENT, &**
    **ANTHONY AMBROSE**

*CIVIL ACTION*
**SUMMONS**

*The State of New Jersey, to the Above Named Defendant(s): CITY OF NEWARK POLICE DEPARTMENT*

        *YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named plaintiff(s), and required to serve upon the attorney(s) for the plaintiff(s), whose name and office address appears above, an answer to the annexed complaint within 35 days after the service of the summons and complaint upon you, exclusive of the day of service. If you fail to answer, judgment by default may be rendered against you for the relief demanded in the complaint. You shall promptly file your answer and proof of service thereof in duplicate with the Clerk of the Superior Court, Essex County, Essex Courts Building,, 50 W. Market Street, Newark, New Jersey, in accordance with the rules of civil practice and procedure.*

        *An individual who is unable to obtain an attorney may communicate with the New Jersey State Bar Association by calling toll free 800-792-8315 (within New Jersey) or 609-394-1101 (from out of state). You may also communicate with a Lawyer Referral Service or, if you cannot afford to pay an attorney, call a Legal Services Office. The phone numbers for the county in which this action is pending are: Lawyer Referral Service (973) 533-6775.    Si Ud. puede pagar los servicios de un abogado, pero no conoce a ninguno, puede llamar a las oficinas del Servicio de Referencias de Abogados de la Asociacion de Abogados del Condado de Essex. Telefono 973-533-6775.*

        *If you cannot afford an attorney, you may call the following 973-622-0063 for the Essex County Legal Aid Association. Si Ud. no puede pagar a un abogado puede llamar al 973-622-0063 para comunicarse con Essex County Legal Services (Servicios Legales del Condado de Essex).*

*Dated: June 21, 2006*

_____
*Donald F. Phelan, Clerk of the Superior Court*

*Name of defendant to be served:*    *NEWARK POLICE DEPARTMENT*
*Address for service:*               *31 Green Street*
                                     *Attention: Chief of Police*
                                     *Newark, New Jersey 07102*

CD5 -0000l

Attorney(s): SCIARRA & CATRAMBONE, LLC
Office Address & Tel.No.:        JEFFREY D. CATRAMBONE, ESQ.
                                1130 CLIFTON AVENUE
                                CLIFTON, NJ 07013
                                (973) 242-2442

For appropriate action and follow up
Original to Corporation Counsel
Copy to file and sender

Attorney(s) for Plaintiff(s)
Plaintiff(s)                                    SUPERIOR COURT OF NEW JERSEY
    ANTHONY BUONO,                              LAW DIVISION: ESSEX COUNTY


            vs.                                 Docket No. ESX-L-4324-06


Defendant(s)
    CITY OF NEWARK,
    CITY OF NEWARK POLICE DEPARTMENT, &
    ANTHONY AMBROSE
                                                CIVIL ACTION
                                                SUMMONS


The State of New Jersey, to the Above Named Defendant(s): CITY OF NEWARK

    YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named plaintiff(s), and required to serve upon the attorney(s) for the plaintiff(s), whose name and office address appears above, an answer to the annexed complaint within 35 days after the service of the summons and complaint upon you, exclusive of the day of service. If you fail to answer, judgment by default may be rendered against you for the relief demanded in the complaint. You shall promptly file your answer and proof of service thereof in duplicate with the Clerk of the Superior Court, Essex County, Essex Courts Building,, 50 W. Market Street, Newark, New Jersey, in accordance with the rules of civil practice and procedure.

    An individual who is unable to obtain an attorney may communicate with the New Jersey State Bar Association by calling toll free 800-792-8315 (within New Jersey) or 609-394-1101 (from out of state). You may also communicate with a Lawyer Referral Service or, if you cannot afford to pay an attorney, call a Legal Services Office. The phone numbers for the county in which this action is pending are: Lawyer Referral Service (973) 533-6775.    Si Ud. puede pagar los servicios de un abogado, pero no conoce a ninguno, puede llamar a las oficinas del Servicio de Referencias de Abogados de la Asociacion de Abogados del Condado de Essex. Telefono 973-533-6775.

    If you cannot afford an attorney, you may call the following 973-622-0063 for the Essex County Legal Aid Association. Si Ud. no puede pagar a un abogado puede llamar al 973-622-0063 para comunicarse con Essex County Legal Services (Servicios Legales del Condado de Essex).


Dated: June 21, 2006                    _____/⟋⟍/_____
                                        Donald F. Phelan, Clerk of the Superior Court


Name of defendant to be served:         CLERK, CITY OF NEWARK.
Address for service:                    920 Broad Street
                                        Newark, New Jersey 07102